# Treat v. Pennsylvania Mutual Life Insurance Company, Appellant.

*Corporations—Insurance company—Receivers—Fraud of officers.*

A receiver will be appointed over a life insurance company where it appears that it had reinsured all of its risks in another company, that thereafter its managers had distributed its assets by voting enormous salaries and back pay to themselves as its officers, and that after the reinsurance of risks, it had no office, solicited no risks, and was practically defunct. In such a case it is not necessary for a shareholder to request the managers to apply for a receiver, before filing his bill.

Argued March 24, 1902. Appeal, No. 364, Jan. T., 1901, by defendant, from decree of C. P. No. 4, Phila. Co., appointing a receiver in case of Frederick H. Treat v. Pennsylvania Mutual Life Insurance Company. Before McCOLLUM, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Bill in equity for the appointment of a receiver.

ARNOLD, P. J., filed the following opinion: ·

Upon a careful examination and consideration of the evidence taken in this case, we are unanimously of the opinion that the Pennsylvania Mutual Life Insurance Company has abandoned the purposes for which it was chartered, and has gone out of business, and that a receiver should be appointed in accordance with the prayer of the bill.

Without condemning its managers for wilful and secret fraud, we find that they have been guilty of such mismanagement as amounts to legal fraud in voting themselves such large salaries as $10,000 a year for the president, and $5,000 each for the treasurer and secretary in a year, when the entire receipts of the company were only $15.30, being the annual premium on one policy of the company outstanding. Not only that, but the managers voted the president, John M. Doyle, and treasurer, William P. Elder, back pay, and gave them judgment notes of the company which were afterwards used to satisfy two mortgages, which were given by Doyle and Elder as security for their subscription to the guaranty fund of the company.

The trial judge has shown that these back payments, after the services were rendered, were illegal. John M. Doyle, William P. Elder and Joseph A. Conroy were the active parties in purchasing the charter from the original company, the Reverting Fund Assurance Association of Berks county. Doyle and Elder agreed to subscribe $50,000, and Conroy, who was an insurance man, testified that he was to have a third interest for his experience. Doyle and Elder gave two mortgages, one for $20,000 and the other for $10,000 to secure part of their subscription. They were to receive three per cent interest on their mortgages, but as no interest was paid them, they satisfied the mortgages and put back into the company their certificates for the shares of stock held by them. This was in effect distribution of the assets of the company between themselves as shareholders, and was clearly illegal. Being so advised by counsel, they restored the mortgages and took back their certificates. They then resorted to the plan of paying themselves enormous salaries and back pay, and issued judgment notes of the company which they used in payment of the mortgages, which were then satisfied a second time. All this was clearly illegal. This was done on November 17, 1897. A year and a half prior thereto, to wit: on May 6, 1896, the company reinsured its risks in the Iowa Life Insurance Company, and during the years of 1896 and 1897, and since, as before said, has been practically out of business, having no income except the premium of $15.30 on a policy for $1,000 outstanding.

An examination of the reports of the company shows the dwindling of its assets. On December 31, 1895, the company reported to the insurance commissioner a total of net invested assets of $86,297.88, and certificates of insurance in force, $1,768,536. Report for 1896 has not been printed in full. Reference is made to it in the report of 1897, in these words: "Amount of net ledger assets December 31, of the previous year, $46,855.74; total income for the year, $15.30." Among the disbursements we find salaries of officers, $26,953.19. These were the salaries authorized by the back pay resolution of November 17, 1897. The result was that the balance of the assets on December 31, 1897, was $17,485.57. On December 31, 1898, the balance to protect contracts was $9,062.23, and December 31, 1899, this balance was reduced to $6,157.63. Thus

we see that the assets on December 31, 1895, of $86,297.88, were on December 31, 1897, reduced to $17,485.57, and in 1899 to $6,157.63, while the total income of the company for each of these years was only $15.30 as against a reported income for 1895 of $94,286.42. As before said, the company reinsured its risks on May 6, 1896, and since that time has been practically out of business. It has no office, solicits no risks, and is practically defunct. Under these circumstances, we are of the opinion that a receiver should be appointed to take charge of the remaining assets of the company, and to recover any amounts which may be due to it. The effect of appointing a receiver in a case of this kind will undoubtedly be to work a dissolution of the company unless something is done to revive it. Authority to appoint a receiver at the suit of a stockholder against a corporation which may be solvent, when the corporation officers by mismanagement or fraud are jeopardizing the property, may be found in the case of Cowen v. Pennsylvania Plate Glass Co., 184 Pa. 1.

It was contended by the defendant that the plaintiff should have requested the managers of the company to apply for a receiver before filing his bill. In some cases that may be so, but here the receiver will be required to proceed against some of the managers of the company to recover the amounts they may have illegally taken out of the treasury, and in such cases it is not necessary to ask them to apply for a receiver to sue themselves. " The authorities are agreed that if it sufficiently appears that a demand would be useless, it need not be made: " Per MITCHELL, J., in Wolf v. Penna. R. R. Co., 195 Pa. 91 (1900).

A receiver will be appointed as prayed for.

*Error assigned* was decree appointing N. Dubois Miller, Esq., receiver.

*Alex. Simpson, Jr.,* of *Simpson & Brown,* with him *Ira J. Williams* and *J. R. Morgan,* for appellant.

*John J. Ridgway,* with him *Thomas Ridgway,* for appellee.

PER CURIAM, May 19, 1902:

The appointment of a receiver is affirmed on the opinion of Judge ARNOLD.