### COLUMBIA NAT. SAND DREDGING CO. v. WASHED BAR SAND DREDGING CO. et al.

(Circuit Court, E. D. Pennsylvania. March 30, 1905.)

No. 40.

1. CORPORATIONS—SUIT BY STOCKHOLDER—NECESSITY OF PREVIOUS DEMAND ON DIRECTORS.

Where the bill of a stockholder shows that the directors of the corporation own a majority of the stock, and charges that it was issued to them without payment, and that they are mismanaging the corporation and diverting its funds and income to themselves, it is not necessary, to entitle complainant to relief, that it should be shown, as required by equity rule 94, that demand was made on them or the corporation before the suit was brought.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 792, 817.]

2. SAME—MISMANAGEMENT—EQUITY. JURISDICTION TO APPOINT RECEIVER.

Where the majority stockholders of a corporation, who are also the directors, are clearly violating the charter rights of the minority, as by diverting all the earnings of the company to themselves, either directly or indirectly, a court of equity will appoint a receiver at suit of a minority stockholder, although the company is solvent; there being no complete, prompt, and efficient remedy at law.

[Ed. Note.—For cases in point, see vol. 12, Cent. Dig. Corporations, §§ 2206, 2207.]

In Equity. Suit for appointment of a receiver. On final hearing.

Thomas Cahall, George Fred'k Keene, and Charles C. Lister, for complainant.

Henry R. Edmunds and William A. Glasgow, Jr., for respondents.

HOLLAND, District Judge. This is a bill in equity filed asking for the appointment of a receiver. The plaintiff, on the 1st day of October, 1892, was the owner of a patent for a sand dredging machine, which had been issued to James H. Miller, and Joseph G. Patterson, of Philadelphia, entered into an agreement with it on the above-mentioned date, in which it was agreed that Patterson

would organize a corporation to operate in the Delaware River and Bay and tributaries thereto in dredging for sand, and that a machine for that purpose should be built, using the patent of Miller, for which the plaintiff, the owner of this patent, agreed to give the proposed corporation a perpetual license, upon the condition that one-fourth of the capital stock, which was to be $25,000, full paid, should be delivered to the plaintiff corporation, and that the dredging machine should be built by Miller, at the expense of Patterson or the proposed corporation.

The proposed corporation was organized shortly after the date of the agreement, with a capital stock of $25,000, one-fourth of which was subsequently issued to the plaintiff company, 125 shares to Robert Patterson, 100 shares to Joseph G. Patterson, 100 shares to Charles M. Patterson, 17 shares to John C. Grady, 17 shares to Robert F. Loper, and 16 shares to Isaac Doughton, for which none of these parties paid anything into the treasury of the company. The sand dredging machine was built by the defendant corporation, under the supervision of Miller, who was employed until May, 1893, at an expense of $9,221.72. It, however, did not work satisfactorily, and $8,598 was expended by the Pattersons to put it in working condition, and not until six months afterward did the machine dredge sand satisfactorily.

The stock certificate was issued to the plaintiff company for their one-fourth interest after Miller left the employ of the defendant company in 1893, and the license for the use of the patented machine was accepted by the defendant on October 17, 1894, and on January 1, 1898, the defendant company rendered to the plaintiff a statement of assets, receipts, and expenditures, showing a deficit of $221.45. Up to this time there was no denial of the plaintiff's right to the stock and interest in the company. From 1893 to January 1, 1898, the defendant company was controlled and conducted alone by Robert Patterson, at the office of the Philadelphia Transportation & Lighterage Company, the stock of which belonged to Joseph G. Patterson and his two sons, and to which company the defendant corporation paid an annual sum of $1,700 to manage and conduct its affairs. There was no management on the part of the board of directors, but its affairs were managed as though they were owned personally by Robert Patterson. The lighterage company purchased the entire product of the defendant company at a certain sum per ton. The money advanced by the Pattersons for building the machine was charged up as a loan against the defendant company in favor of the Philadelphia Transportation & Lighterage Company, upon which interest at 6 per cent. was paid since 1893. Neither Loper nor Grady took any interest in the management of the corporation, and in fact was not aware that they were the owners of any stock. From May, 1893, to January 1, 1898, the defendant company was conducted at a loss, while the Philadelphia Transportation & Lighterage Company was conducted at a profit.

It is not alleged that the defendant company is insolvent, but, upon the other hand, it is claimed that a payment to it of the amount actually due by the Pattersons and the Philadelphia Transportation

& Lighterage Company, together with the amount which should have been paid in as capital of the concern, would not only make the stock valuable, but show a surplus belonging to the defendant company. The plaintiff company is entitled to one-fourth of the capital stock, and it is evident, therefore, that the sum in controversy is more than $2,000, and this court has jurisdiction. The bill does not allege that the plaintiff has made a demand on the corporation or its officers to collect the amount alleged to be due it from the Philadelphia Transportation & Lighterage Company, nor for the collection of the amount due upon the capital stock, nor has it made any other demands upon the corporation, or any of its officers, to correct the mismanagement of the defendant company, nor do we think that it was necessary for it to do so in this case, as required by rule 94, as it is evident that where the officers of the corporation are managing the concern entirely for their own profit, and the benefits derived from the corporation find their way, either directly or through contracts with other concerns of which they are the owners, into the pockets of the officers, it is not necessary that the plaintiff should make demand upon them before filing its bill, as it is manifest that such a demand would be unavailing. Hawes v. Oakland, 104 U. S. 460, 26 L. Ed. 827; Weir v. Bay State Gas Co. (C. C.) 91 Fed. 940; Wolf v. Penna. Railroad Co., 195 Pa. 91, 45 Atl. 936; Treat v. Ins. Co., 203 Pa. 21, 52 Atl. 60.

Courts will not take the property of a corporation out of the possession of its owners at the suit of a minority stockholder, without there is a very grave necessity therefor; but where the facts recited in a bill charging mismanagement show that the board of directors who are responsible for the mismanagement are the majority stockholders, and that they are managing the corporation for their own benefit, and diverting its funds and income to themselves, the minority stockholders, or any of them, would be entitled to relief, either by injunction, where that remedy could correct the evil, or, if necessary, the appointment of a receiver, and the majority stockholders who violated their trust would have no just cause of complaint. A receiver will be appointed where the majority stockholders are clearly violating the chartered rights of the minority and putting their interest in imminent danger, or where the holders of the majority of the stock neglect to elect officers. Smith on Receivers, § 225 (j); State of Montana, etc., v. Second Judicial District (Mont.) 39 Pac. 316, 27 L. R. A. 392, 48 Am. St. Rep. 682; Dodge v. Woolsey, 59 U. S. 331, 15 L. Ed. 401; Pond v. Railroad Company, Fed. Cas. No. 11,265; Ervin v. Railroad Co. (C. C.) 27 Fed. 626; Aiken v. Colorado, etc., Co. (C. C.) 72 Fed. 591. And this last case was referred to and affirmed in the case of Leary v. Columbia River, etc., Co. (C. C.) 82 Fed. 777.

Such temporary receivership may be created where the corporation is entirely solvent, yet the corporate officers, by mismanagement or fraud, are jeopardizing the property. This gives stockholders and creditors a right to complain and ask for a receivership. Cowan v. Plate Glass Co., 184 Pa. 9, 38 Atl. 1075. And it is not enough to defeat jurisdiction in equity that there is a remedy at

law. The remedy must be complete, prompt, and efficient. Gluck & Becker on Receivers of Corporation, § 19, for which many authorities are cited in the notes.

Let a decree be drawn in accordance with this opinion.